**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-cr-367 (RDM)** |
| **JALISE MIDDLETON &** **MARK MIDDLETON,** | |
| **Defendants.** | |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplemental sentencing memorandum. For the reasons set forth herein, the government requests that this Court sentence Jalise and Mark Middleton each to 87 months of incarceration, three years of supervised release, $2,000 in restitution, a fine, and a mandatory assessment of $360.

## I.   INTRODUCTION

The defendants, Jalise and Mark Middleton, are a married couple from Texas. Together, they participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts,

The Middletons came to Washington to interfere with the certification. In the weeks leading up to the January 6, 2021, assault on the United States Capitol, they researched laws governing the certification of the Electoral College vote and possession of weapons in D.C. They also took steps to procure weapons, including chemical spray and electroshock devices. After arriving in Washington, on January 5, they took selfies in front of the metal barricades marking the restricted area around the Capitol; early in the morning of January 6, they returned to the Capitol and again viewed the barricades, this time along First Street. Despite their knowledge of the secure perimeter, but consistent with their intent to interfere, after attending the former president's rally they walked back to the Capitol and entered the restricted area. By 2:09 p.m., they were on the front line of the rioters in the West Plaza. There, Mark Middleton heckled police officers, including by shouted obscenities. Together, the Middletons then threw their bodies into the barricades. When officers tried to restore the barricades and ordered them to get back, both the Middletons assaulted two officers. Mark Middleton assaulted one of the officers with a flagpole and Jalise Middleton scratched the face of the other officer, causing injury. Proud of their conduct, the Middletons took to social media to brag about their breach of the secure perimeter, assaults on police officers, and the fact that their violence helped to delay the certification process. At trial, both defendants lied under oath about their conduct and neither has expressed any remorse. To the contrary, they have sought to personally benefit by using the notoriety of their crimes to raise

---

but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

money and seek fame. The government recommends that the Court sentence both Mark and Jalise

Middleton each to 87 months of incarceration. A sentence of 87 months reflects the gravity of their

conduct, their lack of remorse, and the need for both specific and general deterrence.

## II.      FACTUAL & PROCEDURAL BACKGROUND

### A.      The Middletons' Participation in the January 6, 2021, Riot

The government incorporates by reference its previously set forth facts about the

Middletons' planning for violence, ECF 157 at 3-4, conduct in Washington leading up to entering

the secure perimeter, *id.* at 4-6, assaults on Officers T.T. and R.C. during the riot, *id.* at 6-14, and

after the fact statements, *id.* at 14-16. The government additionally incorporates by reference its

previously articulated descriptions of the Middletons' obstructive conduct. *Id.* at 16-22. All of

these facts remain relevant to sentencing. *See* U.S.S.G. § 1B1.3(a)(1)(A) (For purposes of

determining the sentencing guidelines, offense conduct under Chapter Two and adjustments under

Chapter Three "shall be determined on the basis of […] all acts and omission committed, aided,

abetted, counseled, commanded, induced, procured, or willfully cause by the defendant[.]").

### B.      Procedural History

On April 21, 2021, the Middletons were arrested on a criminal complaint. On December 1,

2021, the grand jury returned a second superseding indictment against them, which charged

violations of 18 U.S.C. § 111(a)(1), 18 U.S.C. § 231(a)(3), 18 U.S.C. § 1512(c)(2) and 2, 18 U.S.C.

§ 1752(a)(1), (2), and (4), and 40 U.S.C. § 5104(e)(2)(D) and (F). A jury trial commenced in this

matter on February 5, 2024. On February 13, 2024, the jury found the defendants guilty on all

counts of the superseding indictment. After two continuances so that the defendants could receive

new counsel, the Court set a sentencing hearing for July 16, 2024. *See* Minute Orders, May 7 and

June 3, 2024. On June 28, 2024, the Supreme Court issued its decision in *Fischer v. United States*.

144 S. Ct. 2176 (2024). In light of *Fischer*, the government moved to dismiss Count Four, *see* ECF

170, and the defendant consented to the motion, *see* ECF 171. On September 3, 2024, the Court

dismissed Count Four. Sentencing is scheduled for October 22, 2024.

### III.    STATUTORY PENALTIES

Following the dismissal of Count Four, the Middletons now face sentencing on the eight

remaining counts of the superseding indictment. The statutory penalties are:

- Counts 1 & 2: Assaulting, Resisting, or Impeding Certain Officers – up to eight years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000, and a mandatory special assessment of $10;
- Count 3: Civil Disorder – up to five years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000, and a mandatory special assessment of $100;
- Count 5: Entering or Remaining in a Restricted Building or Grounds – up to one year of imprisonment, a term of supervised release of not more than one year, a fine up to $100,000, and a mandatory special assessment of $25;
- Count 6: Disorderly or Disruptive Conduct in a Restricted Building or Grounds – up to one year of imprisonment, a term of supervised release of not more than one year, a fine up to $100,000, and a mandatory special assessment of $25;
- Count 7: Engaging in Physical Violence in a Restricted Building or Grounds – up to one year of imprisonment, a term of supervised release of not more than one year, a fine up to $100,000, and a mandatory special assessment of $25;
- Count 8: Disorderly Conduct in a Capitol Building – up to six months of imprisonment, a fine up to $5,000, and a mandatory special assessment of $10;
- Count 9: Act of Physical Violence in a Capitol Building – up to six months of imprisonment, a fine up to $5,000, and a mandatory special assessment of $10.

### IV.    THE SENTENCING GUIDELINES AND ANALYSIS

Before setting forth guidelines for each defendant for their remaining counts of conviction,

the government respectfully notes two errors in the presentence investigation reports prepared by

the U.S. Probation Office. In each version of the presentence investigation reports, the Probation Office did not apply the specific offense characteristic for causing bodily injury to Officer T.T. under U.S.S.G. § 2A2.2(b)(3)(A) to the calculations for either defendant. The Probation Office has also not applied the adjustment for obstruction of justice under U.S.S.G. § 3C1.1 for either defendant based on their false testimony at trial. The bodily injury specific offense characteristic and the adjustment for obstruction of justice should be included in the Middletons' calculations.

Pursuant to U.S.S.G. § 2A2.2(b)(3)(A), "[b]odily injury" "means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1 cmt. n.1(B). The term "significant injury" under § 1B1.1 is open ended, cannot be exactly defined, and should be determined by a factually specific inquiry. *United States v. Lancaster*, 6 F.3d 208, 210 (4th Cir. 1993). A vast array of injuries, some more and some less serious than Officer T.T.'s injuries, have been found to constitute "bodily injury" for purposes of § 2B2.2(b)(3)(A). *See United States v. Jackson*, 918 F.3d 467, 487–88 (6th Cir. 2019) (victim had a "goose egg" lump on his head—as well as scrapes and minor bruises on his arm and shoulder); *United States v. Smith*, 822 F.3d 755, 765 (5th Cir. 2016) (affirming bodily injury enhancement where a bank customer was thrown to the ground from a chair and kicked, and a bank employee sustained bruising and a small amount of hair loss); *United States v. Steele*, 550 F.3d 693, 703 (8th Cir. 2008) (scratches and eye pain were bodily injury); *United States v. Lister*, 229 Fed. App'x. 334, 340 (5th Cir. 2007) (not published) (cuts and bruises were bodily injury even though the victim did not immediately seek medical attention and the medical personnel described the injuries as "superficial" ); *United States v. Hoelzer,* 183 F.3d 880, 882–83 (8th

Cir.1999) (bruises to face, chest, and legs were bodily injury); *United States v. Perkins*, 132 F.3d 1324, 1325 (10th Cir. 1997) (defendant knocked the breath out of the victim and caused small lacerations and bruising); *United States v. Greene*, 964 F.2d 911, 911-12 (9th Cir. 1992) (slap to the face caused swelling and pain); *United States v. Fitzwater,* 896 F.2d 1009, 1012 (6th Cir. 1990) (bank teller hit her head and hip on her teller's drawer in the course of lying down on the floor during the robbery). Even when a victim did not immediately seek medical treatment for his injuries and those injuries could be described as "superficial," Courts have found that the specific enhancement characteristic under § 2A2.2(b)(3)(A) is appropriately applied so long as the injury is "painful and obvious." *Lister*, 229 Fed. Appx. at 340 (internal quotations omitted). If there is evidence in the record that establishes that the victim suffered from *any injury*, then the specific offense characteristic for causing bodily injury can be appropriately applied. *See United States v. Gerrero*, 169 F.3d 933, 947 (5th Cir. 1999). Officer T.T. testified at trial that, as direct result of Jalise Middleton's strikes against him, he suffered from a scratch to his face that was painful and that was made more painful by the chemical irritants in the air. This evidence is sufficient to establish "bodily injury" under U.S.S.G. § 2B2.2(b)(3)(A) and the specific offense characteristic should be applied to both Mark and Jalise Middletons' offenses.

The Probation Office deferred to the Court about whether the obstruction of justice adjustment under U.S.S.G. § 3C1.1 should be applied. The facts, as established at trial, *see* ECF 157 at 16-22, and articulated by the Probation Office, *see* ECF 161 at ¶ 57 and ECF 163 at ¶ 58, demonstrate that both defendants perjured themselves repeatedly. Accordingly, an adjustment under § 3C1.1 is appropriately applied to both Mark and Jalise Middletons' guidelines calculations.

Following the dismissal of Count Four, the government submits that the guidelines for each defendant are calculated as follows:

### **Mark Middleton**

<u>Count One:</u> 18 U.S.C. § 111(a)(1), Assaulting, Resisting or Impeding Certain Officers (Officer T.T.)

| Base Offense Level | 10 | U.S.S.G. § 2A2.4. |
|---|---|---|
| Specific Offense Characteristic (Physical Contact) | +3 | U.S.S.G. § 2A2.4(b)(1)(A) – "If (A) the offense involved physical contact, […] increase by 3 levels." <br><br> During the Middletons' assault of Officer T.T., after Jalise started pulling the officer by his arm over the barricades and towards the mob, Mark Middleton also grabbed Officer T.T.'s left arm and tried to pull him over. *See* ECF 157 at 12. |
| Specific Offense Characteristic (Bodily Injury) | +2 | U.S.S.G. § 2A2.4(b)(2) – "If the victim sustained bodily injury, increase by 2 levels." <br><br> *See supra at 5-6.* |
| *Cross-Reference:* | | U.S.S.G. § 2A2.4(c)(1) – "If the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)." <br><br> The commentary to Section 2A2.2 defines "aggravated assault" as a "felonious assault that involved . . . (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1. Mark Middleton's felonious assault on Officer T.T. was "aggravated assault" because it involved the intent to commit another felony, namely, to obstruct an officer during a civil disorder in violation of 18 U.S.C.  § 231(a)(3). *See United States v. Stevens*, 105 F.4th 473, 474, 480 (D.C. Cir. June 28, 2024) (affirming the district court's application of the § 2A2.2 guideline where "the court concluded that [the defendant] committed the Section 111(a)(1) offenses with an intent to commit another felony: Section 231(a)(3) civil disorder" and noting that "Section 231(a)(3)'s distinct requirements qualify it as 'another felony' separate from Section 111(a)(1)."); *see also United States v. Sargent*, 103 F.4th 820, 827 (D.C. Cir. June 7, 2024) ("§ 2A2.2 unambiguously applies to, and has always applied to, assaults with intent to commit another felony."). |

| Base Offense Level | 14 | U.S.S.G. § 2A2.2(a) |
|---|---|---|
| Specific Offense Characteristic (Bodily Injury) | +3 | U.S.S.G. § 2A2.2(b)(3)(A): "If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury: …(A) [for] Bodily Injury[,] add 3." <br><br> As discussed in detail in the original Sentencing Memo (ECF 157) at 11-12, Mark assaulted Officer T.T. and aided and abetted in Jalise's assault of Officer T.T., which result in the officer experiencing bodily injury.  Specifically, while Jalise and Mark were both gripping Officer T.T.'s left arm, Jalise struck Officer T.T. with her left hand (which had long fingernails and a large diamond ring) multiple times about his arms, chest, and face, causing pain and a scratch on his face, as detailed below. [2] <br><br> *See supra at 5-6 for briefing on the application of U.S.S.G. § 2A2.2(b)(3)(A).* |
| Chapter 3 Adjustment (Official Victim) | +6 | U.S.S.G. § 3A1.2(a), (b): "If (1) the victim was (A) a government officer or employee[,]… (2) the offense of conviction was motivated by such status," and "the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person), increase by 6 levels." <br><br> Mark Middleton admitted that he knew the persons he attacked were police officers and acting in that capacity.  Officer T.T was clearly identifiable as a police officer because he was wearing a full police uniform. <br><br> Defendant's assaults were motivated by the fact that Officer T.T. was performing his duties as a police officer by protecting the U.S. Capitol from the mob of rioters, including the defendant, whom Officer T.T. was trying to remove from the crowd when Mark Middleton assaulted him. |
| Chapter 3 Adjustment | +2 | U.S.S.G. §3C1.1: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the |

[2] As noted in Section 1B1.3, "Unless otherwise specified …(ii) specific offense characteristics and (iii) cross references in Chapter Two… shall be determined on the basis of the following: (1)(A) *all acts and omissions committed, aided, abetted,* counseled, commanded, induced, procured, or willfully caused *by the defendant*." U.S.S.G. § 1B1.3(a)(1)(A) (emphasis added).  As discussed above, in addition to assaulting Officer T.T. himself, Mark Middleton aided and abetted Jalise Middleton's assault of Officer T.T., which resulted in bodily injury.

| (Obstruction of Justice) | | administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels." <br><br> *See discussion of Mark Middleton's untruthful testimony. ECF 157 at 19-22.* |
| Total | 25 | |

<u>Count Two:</u> 18 U.S.C. § 111(a)(1), Assaulting, Resisting or Impeding Certain Officers (Officer R.C.)

| Base Offense Level | 10 | U.S.S.G. §2A2.4. |
|---|---|---|
| Specific Offense Characteristic (Physical Contact and Dangerous Weapon) | +3 | U.S.S.G. § 2A2.4(b)(1) – "If (A) the offense involved physical contact; or (B) a dangerous weapon (including a firearm) was possessed and its use was threatened, increase by 3 levels." <br><br> During Mark Middleton's assault of Officer R.C., he turned his flagpole into a club and struck Officer R.C. in the head with it, making physical contact with the officer. *See* 5/24/24 Sentencing Memo (ECF 157) at 12. <br><br> For full discussion of the flagpole as a dangerous weapon, *see* below. *See also, United States v. Michael Steven Perkins,* 21-cr-00447-4 (CJN) (ECF 279 at 8, 16, 51) (applying dangerous weapon enhancements to a flagpole under U.S.S.G. § 2A2.4(b)). |
| *Cross-Reference:* | | U.S.S.G. §2A2.4(c)(1) – "If the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)." <br><br> The commentary to Section 2A2.2 defines "aggravated assault" as a "felonious assault that involved . . . (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; . . . or (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1. <br><br> Mark Middleton's felonious assault was an "aggravated assault" because it involved the use of a dangerous weapon – the flagpole he used as a club. Additionally, the felonious assault was an aggravated assault because it involved the intent to commit another felony, namely, to obstruct an officer |

| | | during a civil disorder in violation of 18 U.S.C. § 231(a)(3). *See United States v. Stevens*, 105 F.4th 473, 474, 480 (D.C. Cir. June 28, 2024) (affirming the district court's application of the § 2A2.2 guideline where "the court concluded that [the defendant] committed the Section 111(a)(1) offenses with an intent to commit another felony: Section 231(a)(3) civil disorder" and noting that "Section 231(a)(3)'s distinct requirements qualify it as 'another felony' separate from Section 111(a)(1)."); *see also United States v. Sargent*, 103 F.4th 820, 827 (D.C. Cir. June 7, 2024) ("§ 2A2.2 unambiguously applies to, and has always applied to, assaults with intent to commit another felony."). |
|---|---|---|
| Base Offense Level | 14 | U.S.S.G. § 2A2.2(a) |
| Specific Offense Characteristic (Dangerous Weapon Used) | +4 | U.S.S.G. §2A2.2(b)(2)(B): "If […] (B) a dangerous weapon (including a firearm) was otherwise used, increase by 4 levels."<br><br>"'Dangerous weapon' has the meaning given in § 1B1.1 […] and includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury." U.S.S.G. § 2A2.2 cmt. n.1.  The commentary to § 1B1.1 defines a dangerous weapon as "(i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g., a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun)." U.S.S.G. § 1B1.1 cmt. n.1(E).<br><br>Mark Middleton struck Officer R.C. in the head with the tip of his flagpole. Striking a person in the head with a pole demonstrates a clear intent to cause bodily injury to that person. Mark Middleton's strike with the flagpole was intended to cause Officer R.C. pain or injury such that he would not assist Officer T.T., whom the defendants were assaulting. Accordingly, under the circumstances, the flagpole was a dangerous weapon. *See, e.g., United States v. Southard Rumsey*, 21-cr-00387 (APM) (ECF No. 72 at 18-21, 74-75) (finding that a "solid wooden flagpole... probably… 5 to 6 feet |

| | | |
|---|---|---|
| | | in length" was a dangerous weapon pursuant to U.S.S.G. § 2A2.2(b)(2)(B)); *United States v. Thomas Webster*, 21-cr-00208 (APM) (ECF No. 124 at 19) (applying dangerous weapon enhancement to a flagpole pursuant to U.S.S.G. § 2A2.2(b)(2)). |
| Chapter 3 Adjustment (Official Victim) | +6 | U.S.S.G. § 3A1.2(a), (b): "If (1) the victim was (A) a government officer or employee[,]… (2) the offense of conviction was motivated by such status," and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person), increase by 6 levels." Mark Middleton admitted that he knew the persons he attacked were police officers and acting in that capacity. Officer R.C. was clearly identifiable as a police officer because he was wearing a full police uniform and riot gear. Mark Middleton's assaults were motivated by the fact that Officer R.C. was performing his duties as a police officer by protecting the Capitol from the mob of rioters, including the defendant. Mark Middleton's assault against Officer R.C. was further motivated by the fact that Officer R.C was attempting to stop the defendants from assaulting Officer T.T., who was also defending the Capitol against the mob. |
| Chapter 3 Adjustment (Obstruction of Justice) | +2 | U.S.S.G. §3C1.1: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels." *See discussion of Mark Middleton's untruthful testimony. ECF 157 at 19-22.* |
| Total | 26 | |

<u>Count Three:</u> 18 U.S.C. § 231(a)(3), Interfering with Law Enforcement Officials During a Civil Disorder (Officers T.T. and R.C.).

Because no applicable Chapter Two Guideline exists in the Statutory Appendix for this offense, we use "the most analogous guideline." U.S.S.G. §2X5.1. Here, that is U.S.S.G. §2A2.4, "Obstructing or Impeding Officers."

| Base Offense Level | 10 | U.S.S.G. §2A2.4. |
|---|---|---|
| Specific Offense Characteristic (Physical Contact and Dangerous Weapon) | +3 | U.S.S.G. § 2A2.4(b)(1) – "(1) If (A) the offense involved physical contact; or (B) a dangerous weapon (including a firearm) was possessed and its use was threatened, increase by 3 levels."<br><br>Mark Middleton made physical contact with Officers T.T. and R.C. and used a dangerous weapon (a flagpole) to assault Officer R.C., as discussed above. |
| Specific Offense Characteristic (Bodily Injury) | +2 | U.S.S.G. § 2A2.4(b)(2) – "If the victim sustained bodily injury, increase by 2 levels."<br><br>Mark Middleton aided and abetted Jalise Middleton's assault of Officer T.T., which caused injury to Officer T.T. *See supra* at 5-6. |
| *Cross-Reference:* | | U.S.S.G. §2A2.4(c)(1) – "If the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)."<br><br>Because the relevant conduct here includes aggravated assault, §2A2.2 applies. The commentary to Section 2A2.2 defines "aggravated assault" as a "felonious assault that involved . . . (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; . . . or (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1.<br><br>Mark Middleton's felonious (punishable by up to 8 years' imprisonment, pursuant to 18 U.S.C. § 111(a)) assault of Officer R.C. was an "aggravated assault" because it involved the use of a dangerous weapon – the flagpole he used as a club. Additionally, Mark Middleton's felonious assaults of both Officers T.T. and R.C. were aggravated assaults because they involved the intent to commit another felony, namely, to obstruct an officer during a civil disorder in violation of 18 U.S.C. § 231(a)(3). *See United States v. Stevens*, 105 F.4th 473, 474, 480 (D.C. Cir. June 28, 2024) (noting that "Section 231(a)(3)'s distinct requirements qualify it as 'another felony' separate from Section 111(a)(1)."); *see also United States v. Sargent*, 103 F.4th 820, 827 (D.C. Cir. June 7, 2024) ("§ 2A2.2 unambiguously applies to, and has always applied to, assaults with intent to commit another felony." |
| Base Offense | 14 | U.S.S.G. §2A2.2(a) |

| Level: | | |
|---|---|---|
| Specific Offense Characteristic (Dangerous Weapon Used) | +4 | U.S.S.G. §2A2.2(b)(2)(B): "If [...] (B) a dangerous weapon (including a firearm) was otherwise used, increase by 4 levels." "Dangerous weapon" has the meaning given in § 1B1.1 [...] and includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury." *See analysis for Count 2 above.* |
| Specific Offense Characteristics (Bodily Injury) | +3 | U.S.S.G. § 2A2.2(b)(3)(A): "If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury: ...(A) [for] Bodily Injury[,] add 3." *See analysis for Count 1 above.* |
| Chapter 3 Adjustment (Official Victim) | +6 | U.S.S.G. § 3A1.2(a), (b): "If (1) the victim was (A) a government officer or employee[,]... (2) the offense of conviction was motivated by such status," and "the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person), increase by 6 levels." *See analysis for Counts 1 and 2 above.* |
| Chapter 3 Adjustment (Obstruction of Justice) | +2 | U.S.S.G. §3C1.1: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels." *See discussion of Mark Middleton's untruthful testimony. ECF 157 at 19-22.* |
| Total | 29 | |

<u>Count Five:</u> 18 U.S.C. § 1752(a)(1) – Entering and Remaining in a Restricted Building or Grounds

The Statutory Appendix lists two guidelines for a Section 1752 offense, U.S.S.G. § 2A2.4 (Obstructing or Impeding Officers) and § 2B2.3 (Trespass). The Guidelines direct that if Appendix A specifies more than one guideline, use the "most appropriate" guideline for the offense conduct charged in the count of conviction. See §1B1.2 n.1. Here, since Section 1752(a)(1) is essentially a trespass statute, the most applicable guideline is § 2B2.3 (Trespass).

13

| Base Offense Level: | 4 | §2B2.3(a) |
|---|---|---|
| Specific Offense Characteristic (Restricted Grounds) | +2 | U.S.S.G. § 2B2.3(b)(1)(A)(vii): the trespass occurred "at any restricted buildings or grounds." <br><br> On January 6, 2021, the U.S. Capitol and its grounds were restricted because protectees of the United States Secret Service were visiting. *See* 18 U.S.C. § 1752(c)(1)(B). |
| Specific Offense Characteristic (Dangerous Weapon Possessed) | +2 | U.S.S.G. § 2B2.3(b)(2): "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." <br><br> *See analysis for Count 2 above.* |
| *Cross Reference* | | U.S.S.G. § 2B2.3(c)(1): "If the offense was committed with the intent to commit a felony offense, apply § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that felony offense, if the resulting offense level is greater than that determined above." <br><br> U.S.S.G. §2X1.1(a): "The base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." <br><br> Mark Middleton entered and remained in the restricted area of the Capitol complex for the purpose of committing multiple felonies, including assaulting both Officers T.T. and R.C., in violation of 18 U.S.C. § 111(a), and obstructing officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3). The most serious of these in the instant case is obstructing officers during a civil disorder, and so the substantive offense is thus Count Three (18 U.S.C. § 231(a)(3), Civil Disorder), and the base offense level for the Section 231 offense should be applied – here, U.S.S.G. § 2A2.2 – as well as any adjustments from § 2A2.2 Guideline for any intended offense conduct. |
| Base Offense Level (adjusted) | 14 (from Count 3) | U.S.S.G. §2A2.2(a) |
| Specific Offense Characteristic (Dangerous Weapon Used) | +4 | U.S.S.G. §2A2.2(b)(2)(B): "If […] (B) a dangerous weapon (including a firearm) was otherwise used, increase by 4 levels." "Dangerous weapon" has the meaning given in § 1B1.1 […] and includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to |

14

| | | |
|---|---|---|
| | | commit bodily injury." *See analysis for Count 2 above.* |
| Specific Offense Characteristics (Bodily Injury) | +3 | U.S.S.G. § 2A2.2(b)(3)(A): "If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury: …(A) [for] Bodily Injury[,] add 3." *See analysis for Count 1 above.* |
| Chapter Three Adjustment (Obstruction of Justice) | +2 | U.S.S.G. § 3C1.1: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels." *See discussion of Mark Middleton's untruthful testimony. ECF 157 at 19-22.* |
| Total | 23 | |

<u>Count Six:</u> 18 U.S.C. § 1752(a)(2) – Disorderly and Disruptive Conduct in a Restricted Building or Grounds

The Statutory Appendix lists two guidelines for a Section 1752 offense, U.S.S.G. § 2A2.4 (Obstructing or Impeding Officers) and § 2B2.3 (Trespass). The Guidelines direct that if Appendix A specifies more than one guideline, use the "most appropriate" guideline for the offense conduct charged in the count of conviction. See §1B1.2 n.1. Here, because Section 1752(a)(2) involves behavior beyond mere trespass, the most applicable guideline is § 2A2.4 (Obstructing or Impeding Officers). *See United States v. Nassif*, 97 F.4th 968, 983 (D.C. Cir. 2024) ("But section 2B2.3 is a mismatch for the section 1752(a)(2) violation charged in Count Two…Section 2A2.4 is a more natural fit.").

| | | |
|---|---|---|
| Base Offense Level: | 10 | U.S.S.G. § 2A2.4 |
| Specific Offense Characteristic (Physical Contact and Threatened Use of Dangerous Weapon) | +3 | U.S.S.G. § 2A2.4(b)(1)(A) and (B): "If (A) the offense involved physical contact; or (B) a dangerous weapon (including a firearm) was possessed and its use was threatened, increase by 3 levels." As the jury specifically found, the assaults that Mark committed on restricted Capitol grounds, Counts One and |

| | | |
|---|---|---|
| | | Two, both involved physical contact with, respectively, Officers T.T. and R.C.  Additionally, as detailed above, Mark Middleton possessed and used a dangerous weapon (flagpole) in his assault of Officer R.C. on restricted Capitol grounds. |
| Specific Offense Characteristic (Bodily Injury) | +2 | U.S.S.G. § 2A2.4(b)(2): "If the victim sustained bodily injury, increase by 2 levels."<br><br>As detailed above, Mark Middleton assaulted Officer T.T. and aided and abetted in Jalise Middleton's assault of Officer T.T., which resulted in the officer experiencing bodily injury. Specifically, while the Middletons were both gripping Officer T.T.'s left arm, Jalise Middleton struck Officer T.T. with her left hand (which had long fingernails and a large diamond ring) multiple times about his arms, chest, and face, resulting in bodily injury as discussed above. |
| *Cross-reference* | | "If the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)."<br><br>Because the relevant conduct includes aggravated assault, §2A2.2 applies. The commentary to Section 2A2.2 defines "aggravated assault" as a "felonious assault that involved . . . (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; . . . or (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1.<br><br>Mark Middleton engaged in disruptive and disorderly conduct on restricted grounds, including the felonious (punishable by up to 8 years' imprisonment, pursuant to 18 U.S.C.§ 111(a)) assault of Officer R.C., which was an "aggravated assault" because it involved the use of a dangerous weapon – the flagpole he used as a club. Additionally, Mark Middleton's felonious assaults of both Officers T.T. and R.C. were aggravated assaults because they involved the intent to commit another felony, namely, to obstruct an officer during a civil disorder in violation of 18 U.S.C. § 231(a)(3).  *See United States v. Stevens*, 105 F.4th 473, 474, 480 (D.C. Cir. June 28, 2024) (affirming the district court's application of the § 2A2.2 guideline where "the court concluded that [the defendant] committed the Section 111(a)(1) offenses with an intent to commit another felony: Section 231(a)(3) civil disorder" and noting that "Section 231(a)(3)'s distinct requirements qualify it as 'another felony' separate from |

16

| | | Section 111(a)(1).”); *see also United States v. Sargent*, 103 F.4th 820, 827 (D.C. Cir. June 7, 2024) (“§ 2A2.2 unambiguously applies to, and has always applied to, assaults with intent to commit another felony |
|---|---|---|
| Base Offense Level | 14 | U.S.S.G. § 2A2.2(a) |
| Specific Offense Characteristic | +4 | U.S.S.G. § 2A2.2(b)(2) Dangerous weapon was brandished or used.<br><br>*See analysis for Count 2, above.* |
| Specific Offense Characteristic (Bodily Injury) | +3 | U.S.S.G. § 2A2.2(b)(3)(A): “If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury: …(A) [for] Bodily Injury[,] add 3.”<br><br>*See analysis for Count 1 above.* |
| Chapter 3 Adjustment (Obstruction of Justice) | +2 | U.S.S.G. § 3C1.1: “If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.”<br><br>*See discussion of Mark Middleton's untruthful testimony. ECF 157 at 19-22.* |
| Total | 23 | |

<u>Count Seven:</u> 18 U.S.C. § 1752(a)(4) – Engaging in Physical Violence in a Restricted Building or Grounds

| Base Offense Level: | 10 | U.S.S.G. § 2A2.4(a) |
|---|---|---|
| Specific Offense Characteristic (Physical Contact and Threatened Use of Dangerous Weapon) | +3 | U.S.S.G. § 2A2.4(b)(1)(A) and (B): “If (A) the offense involved physical contact; or (B) a dangerous weapon (including a firearm) was possessed and its use was threatened, increase by 3 levels.”<br><br>As the jury specifically found, the assaults that Mark committed on restricted Capitol grounds, Counts One and Two, both involved physical contact with, respectively, Officers T.T. and R.C.  Additionally, as detailed above, Mark Middleton possessed and used a dangerous weapon (flagpole) in his assault of Officer R.C. on restricted Capitol grounds. |
| Specific Offense | +2 | U.S.S.G. § 2A2.4(b)(2): “If the victim sustained bodily injury, |

| Characteristic (Bodily Injury) | | increase by 2 levels." *See analysis for Count 1 above.* |
|---|---|---|
| *Cross-Reference:* | | U.S.S.G. §2A2.4(c)(1) – "If the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)." Because the relevant conduct includes aggravated assault, §2A2.2 applies. The commentary to Section 2A2.2 defines "aggravated assault" as a "felonious assault that involved . . . (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; . . . or (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1. Mark Middleton's felonious (punishable by up to 8 years' imprisonment, pursuant to 18 U.S.C.§ 111(a)) assault of Officer R.C. was an "aggravated assault" because it involved the use of a dangerous weapon – the flagpole he used as a club. Additionally, Mark Middleton's felonious assaults of both Officers T.T. and R.C. were aggravated assaults because they involved the intent to commit another felony, namely, to obstruct an officer during a civil disorder in violation of 18 U.S.C. § 231(a)(3). *See United States v. Stevens*, 105 F.4th 473, 474, 480 (D.C. Cir. June 28, 2024) (affirming the district court's application of the § 2A2.2 guideline where "the court concluded that [the defendant] committed the Section 111(a)(1) offenses with an intent to commit another felony: Section 231(a)(3) civil disorder" and noting that "Section 231(a)(3)'s distinct requirements qualify it as 'another felony' separate from Section 111(a)(1)."); *see also United States v. Sargent*, 103 F.4th 820, 827 (D.C. Cir. June 7, 2024) ("§ 2A2.2 unambiguously applies to, and has always applied to, assaults with intent to commit another felony." |
| Base Offense Level: | 14 | U.S.S.G. §2A2.2(a) |
| Specific Offense Characteristic (Dangerous Weapon Used) | +4 | U.S.S.G. § 2A2.2(b)(2) Dangerous weapon was brandished or used. *See analysis for Count 2, above.* |
| Specific Offense Characteristic (Bodily Injury) | +3 | U.S.S.G. § 2A2.2(b)(3)(A): "If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury: …(A) [for] Bodily Injury[,] add 3." *See analysis for Count 1 above.* |

| Adjustment | +6 | U.S.S.G. § 3A1.2(a), (b): "If (1) the victim was (A) a government officer or employee[,]... (2) the offense of conviction was motivated by such status," and "the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person), increase by 6 levels."<br><br>*See analysis for Counts 1 and 2 above.* |
| Chapter 3 Adjustment (Obstruction of Justice) | +2 | U.S.S.G. § 3C1.1: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels."<br><br>*See discussion of Mark Middleton's untruthful testimony. ECF 157 at 19-22.* |
| Total | 29 | |

Count Eight: 40 U.S.C. § 5104(e)(2)(D) – Disorderly Conduct in a Capitol Building

| Base Offense Level: | n/a | Because this offense is a Class B misdemeanor, the Guidelines do not apply. *See* 18 U.S.C. § 3559; U.S.S.G. §1B1.9. |

Count Nine: 40 U.S.C. § 5104(e)(2)(G) – Parading, Demonstrating, or Picketing in a Capitol Building

| Base Offense Level: | n/a | Because this offense is a Class B misdemeanor, the Guidelines do not apply. *See* 18 U.S.C. § 3559; U.S.S.G. §1B1.9. |

<u>Grouping Analysis, Criminal History, and Guidelines Range for Mark Middleton</u>

Under U.S.S.G. §3D1.2, "closely related counts" group. Accordingly, Mark Middleton's offenses all group. In the first instance, pursuant to U.S.S.G. § 3D1.2(b): Counts Five (18 U.S.C. § 1752(a)(1)) and Six (18 U.S.C. § 1752(a)(2)) group because they have the same victim (Congress) and two or more acts or transactions connected by a common criminal objective; Counts Three (18 U.S.C. § 231(a)(3)) and Seven (18 U.S.C. § 1752(a)(4)) group because they

19

similarly have the same victims (Officers T.T. and R.C.) and two or more acts or transactions connected by a common criminal objective. Furthermore, Counts One and Two group with Counts Three, Five, Six, and Seven since they embody conduct (Count One, bodily injury, and Count Two, dangerous weapon use) that is treated as a specific offense characteristic to the § 2A2.2 guideline applicable to Counts Three, Five, Six, and Seven. Because Count Three has the highest offense level, the offense level for the group is the offense level for Count Three, which is 29. *See* U.S.S.G. § 3D1.3(a). Accordingly, the total offense level is 29. The Probation Office has calculated Mark to have a criminal history category of I, which is not disputed. Therefore, with the offense level of 29 as calculated above, the advisory guidelines range for Mark Middleton is 87-108 months of incarceration.

## **Jalise Middleton**

<u>Count One:</u> 18 U.S.C. § 111(a)(1), Assaulting, Resisting or Impeding Certain Officers (Officer T.T.).

| Base Offense Level | 10 | U.S.S.G. §2A2.4. |
|---|---|---|
| Specific Offense Characteristic (Physical Contact) | +3 | U.S.S.G. § 2A2.4(b)(1)(A) – "If (A) the offense involved physical contact, […] increase by 3 levels." <br><br> During the Middletons' assault of Officer T.T., Jalise grabbed the officer and pulling him by his arm over the barricades and towards the mob. After Mark Middleton joined Jalise (and also grabbed Officer T.T.'s left arm and tried to pull him over the barricades), Jalise, who was still gripping the officer's arm with her right hand, began striking Officer T.T. with her left hand multiple times about his arms, chest, and face, even causing the officer pain and a scratch on his face with her long fingernails and/or large diamond ring. *See* ECF 157 at 12. |
| Specific Offense Characteristic (Bodily Injury) | +2 | U.S.S.G. § 2A2.4(b)(2) – "If the victim sustained bodily injury, increase by 2 levels." |
| *Cross-Reference:* | | U.S.S.G. § 2A2.4(c)(1) – "If the conduct constituted |

| | | aggravated assault, apply § 2A2.2 (Aggravated Assault)." |
|---|---|---|
| | | The commentary to Section 2A2.2 defines "aggravated assault" as a "felonious assault that involved . . . (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1. Jalise Middleton's felonious assault on Officer T.T. was "aggravated assault" because it involved the intent to commit another felony, namely, to obstruct an officer during a civil disorder in violation of 18 U.S.C. § 231(a)(3). *See United States v. Stevens*, 105 F.4th 473, 474, 480 (D.C. Cir. June 28, 2024) (affirming the district court's application of the § 2A2.2 guideline where "the court concluded that [the defendant] committed the Section 111(a)(1) offenses with an intent to commit another felony: Section 231(a)(3) civil disorder" and noting that "Section 231(a)(3)'s distinct requirements qualify it as 'another felony' separate from Section 111(a)(1)."); *see also United States v. Sargent*, 103 F.4th 820, 827 (D.C. Cir. June 7, 2024) ("§ 2A2.2 unambiguously applies to, and has always applied to, assaults with intent to commit another felony."). |
| Base Offense Level | 14 | U.S.S.G. § 2A2.2(a) |
| Specific Offense Characteristic (Bodily Injury) | +3 | U.S.S.G. § 2A2.2(b)(3)(A) "If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury." As discussed in the original sentencing memo, ECF 157 at 12, while Jalise and Mark were both gripping Officer T.T.'s left arm, Jalise struck Officer T.T. with her left hand (which had long fingernails and a large diamond ring) multiple times about his arms, chest, and face, causing pain and a scratch on his face. [3] *See supra at 5-6 for briefing on the application of U.S.S.G. § 2A2.2(b)(3)(A).* |
| Chapter 3 | +6 | U.S.S.G. § 3A1.2(a), (b): "If (1) the victim was (A) a |

---

[3] As noted in Section 1B1.3, "Unless otherwise specified …(ii) specific offense characteristics and (iii) cross references in Chapter Two… shall be determined on the basis of the following: (1)(A) *all acts and omissions committed, aided, abetted,* counseled, commanded, induced, procured, or willfully caused *by the defendant*." U.S.S.G. § 1B1.3(a)(1)(A) (emphasis added). As discussed above, in addition to assaulting Officer T.T. himself, Mark Middleton aided and abetted Jalise Middleton's assault of Officer T.T., which resulted in bodily injury.

| | | |
|---|---|---|
| Adjustment (Official Victim) | | government officer or employee[,]… and (2) the offense of conviction was motivated by such status," and "the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person), increase by 6 levels."<br><br>Jalise Middleton admitted that she knew the persons she attacked were police officers and acting in that capacity. Officer T.T. was clearly identifiable as a police officer because he was wearing a full police uniform. Her assaults were motivated by the fact that Officer T.T. was performing his duties as a police officer by protecting the Capitol from the mob of rioters, including the defendant. |
| Chapter 3 Adjustment (Obstruction of Justice) | +2 | U.S.S.G. §3C1.1: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels."<br><br>*See discussion of Jalise Middleton's untruthful testimony. ECF 157 at 16-18.* |
| Total | 25 | |

<u>Count Two:</u> 18 U.S.C. § 111(a)(1), Assaulting, Resisting or Impeding Certain Officers (Officer R.C.)

| | | |
|---|---|---|
| Base Offense Level | 10 | U.S.S.G. §2A2.4(a) |
| Specific Offense Characteristic (Physical Contact) | +3 | U.S.S.G. § 2A2.4(b)(1)(A) – "If (A) the offense involved physical contact… increase by 3 levels."<br><br>During Jalise Middleton's assault of Officer R.C., she grabbed the riot padding on Officer R.C.'s forearm and tried to pull him into the crowd, making physical contact with the officer. *See* ECF 157 at 13. |
| *Cross-Reference:* | | U.S.S.G. §2A2.4(c)(1) – "If the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)."<br><br>The commentary to Section 2A2.2 defines "aggravated assault" as a "felonious assault that involved . . . (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1. Jalise Middleton's |

| | | |
|---|---|---|
| | | felonious (punishable by up to 8 years' imprisonment, pursuant to 18 U.S.C.§ 111(a)) assault on Officer R.C. was "aggravated assault" because it involved the intent to commit another felony, namely, to obstruct an officer during a civil disorder in violation of 18 U.S.C. § 231(a)(3). *See United States v. Stevens*, 105 F.4th 473, 474, 480 (D.C. Cir. June 28, 2024) (affirming the district court's application of the § 2A2.2 guideline where "the court concluded that [the defendant] committed the Section 111(a)(1) offenses with an intent to commit another felony: Section 231(a)(3) civil disorder" and noting that "Section 231(a)(3)'s distinct requirements qualify it as 'another felony' separate from Section 111(a)(1)."); *see also United States v. Sargent*, 103 F.4th 820, 827 (D.C. Cir. June 7, 2024) ("§ 2A2.2 unambiguously applies to, and has always applied to, assaults with intent to commit another felony."). |
| Base Offense Level | 14 | U.S.S.G. § 2A2.2(a) |
| Chapter 3 Adjustment (Official Victim) | +6 | U.S.S.G. § 3A1.2(a), (b): "If (1) the victim was (A) a government officer or employee[,]... (2) the offense of conviction was motivated by such status," and "the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person) , increase by 6 levels."<br><br>Jalise Middleton admitted that she knew the persons she attacked were police officers and acting in that capacity. Officer R.C. was clearly identifiable as a police officer because he was wearing a full police uniform and riot gear.<br><br>Defendant's assaults were motivated by the fact that Officer R.C. was performing his duties as a police officer by protecting the Capitol from the mob of rioters, including the defendant. Jalise Middleton's assault against Officer R.C. was further motivated by the fact that Officer R.C. was attempting to stop the defendants from assaulting Officer T.T., who was also defending the Capitol against the mob. |
| Chapter 3 Adjustment (Obstruction of Justice) | +2 | U.S.S.G. §3C1.1: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels." |

| | | *See discussion of Jalise Middleton's untruthful testimony. ECF 157 at 16-18.* |
|---|---|---|
| Total | 22 | |

<u>Count Three:</u> 18 U.S.C. § 231(a)(3), Interfering with Law Enforcement Officials During a Civil Disorder (Officers T.T. and R.C.).

Because no applicable Chapter Two Guideline exists in the Statutory Appendix for this offense, we use "the most analogous guideline." U.S.S.G. §2X5.1. Here, that is U.S.S.G. §2A2.4, "Obstructing or Impeding Officers."

| Base Offense Level | 10 | U.S.S.G. §2A2.4(a) |
|---|---|---|
| Specific Offense Characteristic (Physical Contact) | +3 | U.S.S.G. § 2A2.4(b)(1)(A) – "If (A) the offense involved physical contact… increase by 3 levels."<br><br>*See analysis for Counts 1 and 2 above.* |
| Specific Offense Characteristic (Bodily Injury) | +2 | U.S.S.G. § 2A2.4(b)(2) – "If the victim sustained bodily injury, increase by 2 levels."<br><br>*See analysis for Count 1 above.* |
| *Cross-Reference:* | | U.S.S.G. §2A2.4(c)(1) – "If the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)."<br><br>The relevant conduct here constitutes aggravated assault, so we apply § 2A2.2. The commentary to Section 2A2.2 defines "aggravated assault" as a "felonious assault that involved . . . (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1. Jalise Middleton's felonious assaults on Officers T.T. and R.C. were aggravated assaults because they involved the intent to commit another felony, namely, to obstruct an officer during a civil disorder in violation of 18 U.S.C. § 231(a)(3). *See United States v. Stevens*, 105 F.4th 473, 474, 480 (D.C. Cir. June 28, 2024) (noting that "Section 231(a)(3)'s distinct requirements qualify it as 'another felony' separate from Section 111(a)(1)."); *see also United States v. Sargent*, 103 F.4th 820, 827 (D.C. Cir. June 7, 2024) ("§ 2A2.2 unambiguously applies to, and has always applied to, assaults with intent to commit another felony."). |
| Base Offense Level: | 14 | U.S.S.G. §2A2.2(a) |
| Specific Offense Characteristic | +3 | U.S.S.G. § 2A2.2(b)(3)(A) "If the victim sustained bodily injury, increase the offense level according to the seriousness |

| | | |
|---|---|---|
| (Bodily Injury) | | of the injury." <br><br> *See analysis for Count 1 above.* |
| Chapter 3 Adjustment (Official Victim) | +6 | U.S.S.G. § 3A1.2(a), (b): "If (1) the victim was (A) a government officer or employee[,]… (2) the offense of conviction was motivated by such status," and "the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person) , increase by 6 levels." <br><br> *See analysis for Counts 1 and 2 above.* |
| Chapter 3 Adjustment (Obstruction of Justice | +2 | U.S.S.G. §3C1.1: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels." <br><br> *See discussion of Jalise Middleton's untruthful testimony. ECF 157 at 16-18.* |
| Total | 25 | |

Count Five: 18 U.S.C. § 1752(a)(1) – Entering and Remaining in a Restricted Building or Grounds

The Statutory Appendix lists two guidelines for a Section 1752 offense, U.S.S.G. § 2A2.4 (Obstructing or Impeding Officers) and § 2B2.3 (Trespass). The Guidelines direct that if Appendix A specifies more than one guideline, use the "most appropriate" guideline for the offense conduct charged in the count of conviction. See §1B1.2 n.1. Here, since Section 1752(a)(1) is essentially a trespass statute, the most applicable guideline is § 2B2.3 (Trespass).

| | | |
|---|---|---|
| Base Offense Level: | 4 | §2B2.3(a) |
| Specific Offense Characteristic (Restricted Grounds) | +2 | U.S.S.G. § 2B2.3(b)(1)(A)(vii): the trespass occurred "at any restricted buildings or grounds." <br><br> On January 6, 2021, the U.S. Capitol and its grounds were restricted because protectees of the United States Secret Service were visiting.  *See* 18 U.S.C. § 1752(c)(1)(B). |
| *Cross Reference* | | U.S.S.G. § 2B2.3(c)(1): "If the offense was committed with the intent to commit a felony offense, apply § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that felony offense, if the resulting offense level is greater than that determined above." <br><br> U.S.S.G. §2X1.1(a): "The base offense level from the guideline |

| | | for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."<br><br>Jalise Middleton entered and remained in the restricted area of the Capitol complex for the purpose of committing multiple felonies, including assaulting both Officers T.T. and R.C., in violation of 18 U.S.C. § 111(a), and obstructing officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3). The most serious of these in the instant case is obstructing officers during a civil disorder, and so the substantive offense is thus Count Three (18 U.S.C. § 231(a)(3), Civil Disorder), and the base offense level for the Section 231 offense should be applied – here, U.S.S.G. § 2A2.2 – as well as any adjustments from § 2A2.2 Guideline for any intended offense conduct. |
|---|---|---|
| Base Offense Level (adjusted) | 14 (from Count 3) | U.S.S.G. § 2A2.2 (a) |
| Specific Offense Characteristic (Bodily Injury) | +3 | U.S.S.G. § 2A2.2(b)(3)(A) "If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury."<br><br>*See analysis for Count 1 above.* |
| Chapter Three Adjustment (Obstruction of Justice) | +2 | U.S.S.G. § 3C1.1: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels."<br><br>*See discussion of Jalise Middleton's untruthful testimony. ECF 157 at 16-18.* |
| Total | 19 | |

<u>Count Six</u>: 18 U.S.C. § 1752(a)(2) – Disorderly and Disruptive Conduct in a Restricted Building or Grounds

The Statutory Appendix lists two guidelines for a Section 1752 offense, U.S.S.G. § 2A2.4 (Obstructing or Impeding Officers) and § 2B2.3 (Trespass). The Guidelines direct that if Appendix A specifies more than one guideline, use the "most appropriate" guideline for the offense conduct charged in the count of conviction. See §1B1.2 n.1. Here, because Section 1752(a)(2) involves behavior beyond mere trespass, the most applicable guideline is § 2A2.4 (Obstructing or Impeding

Officers). *See United States v. Nassif*, 97 F.4th 968, 983 (D.C. Cir. 2024) ("But section 2B2.3 is a mismatch for the section 1752(a)(2) violation charged in Count Two…Section 2A2.4 is a more natural fit.").

| Base Offense Level: | 10 | U.S.S.G. § 2A2.4(a) |
|---|---|---|
| Specific Offense Characteristic (Physical Contact) | +3 | U.S.S.G. § 2A2.4(b)(1)(A): "If the offense involved physical contact."<br><br>As the jury specifically found, Counts One and Two both involved physical contact with, respectively, Officers T.T. and R.C.. |
| Specific Offense Characteristic (Bodily Injury) | +2 | U.S.S.G. § 2A2.4(b)(2) – "If the victim sustained bodily injury, increase by 2 levels."<br><br>*See* discussion below. |
| *Cross-reference* | | "If the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)."<br><br>The commentary to Section 2A2.2 defines "aggravated assault" as a "felonious assault that involved . . . (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1. Jalise Middleton's felonious (punishable by up to 8 years' imprisonment, pursuant to 18 U.S.C.§ 111(a)) assaults on Officers T.T. and R.C. were aggravated assaults because they involved the intent to commit another felony, namely, to obstruct an officer during a civil disorder in violation of 18 U.S.C. § 231(a)(3). *See United States v. Stevens*, 105 F.4th 473, 474, 480 (D.C. Cir. June 28, 2024) (noting that "Section 231(a)(3)'s distinct requirements qualify it as 'another felony' separate from Section 111(a)(1)."); *see also United States v. Sargent*, 103 F.4th 820, 827 (D.C. Cir. June 7, 2024) ("§ 2A2.2 unambiguously applies to, and has always applied to, assaults with intent to commit another felony."). |
| Base Offense Level | 14 | U.S.S.G. § 2A2.2(a) |
| Specific Offense Characteristic | +3 | U.S.S.G. § 2A2.2(b)(3)(A) Bodily Injury.<br><br>*See analysis for Count 1 above.* |
| Chapter Three Adjustment (Obstruction of Justice) | +2 | U.S.S.G. § 3C1.1: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels." |

| | | |
|---|---|---|
| | | *See discussion of Jalise Middleton's untruthful testimony. ECF 157 at 16-18.* |
| Total | 19 | |

<u>Count Seven</u>: 18 U.S.C. § 1752(a)(4) – Engaging in Physical Violence in a Restricted Building or Grounds

| | | |
|---|---|---|
| Base Offense Level: | 10 | U.S.S.G. § 2A2.4(a) |
| Specific Offense Characteristic (Bodily Injury) | +3 | U.S.S.G. § 2A2.4(b)(1)(A): "If the offense involved physical contact."<br><br>As the jury specifically found, Counts One and Two both involved physical contact with, respectively, Officers T.T. and R.C. |
| Specific Offense Characteristic (Bodily Injury) | +2 | U.S.S.G. § 2A2.4(b)(2) – "If the victim sustained bodily injury, increase by 2 levels."<br><br>*See* discussion below. |
| *Cross-reference* | | "If the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)."<br><br>The commentary to Section 2A2.2 defines "aggravated assault" as a "felonious assault that involved . . . (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1. Jalise Middleton's felonious (punishable by up to 8 years' imprisonment, pursuant to 18 U.S.C.§ 111(a)) assaults on Officers T.T. and R.C. were aggravated assaults because they involved the intent to commit another felony, namely, to obstruct an officer during a civil disorder in violation of 18 U.S.C. § 231(a)(3). *See United States v. Stevens*, 105 F.4th 473, 474, 480 (D.C. Cir. June 28, 2024) (noting that "Section 231(a)(3)'s distinct requirements qualify it as 'another felony' separate from Section 111(a)(1)."); *see also United States v. Sargent*, 103 F.4th 820, 827 (D.C. Cir. June 7, 2024) ("§ 2A2.2 unambiguously applies to, and has always applied to, assaults with intent to commit another felony."). |
| Base offense level | 14 | U.S.S.G. §2A2.2(a) |
| Specific Offense Characteristic (Bodily Injury) | +3 | U.S.S.G. § 2A2.2(b)(3)(A) – Bodily Injury.<br><br>*See analysis for Count 1 above.* |
| Adjustment | +6 | U.S.S.G. § 3A1.2(a), (b): "If (1) the victim was (A) a government officer or employee[,]… (2) the offense of conviction was motivated by such status," and "the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the |

| | | |
|---|---|---|
| | | Person), increase by 6 levels."<br><br>*See analysis for Counts 1and 2 above.* |
| Chapter Three Adjustment (Obstruction of Justice) | +2 | U.S.S.G. § 3C1.1: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels."<br><br>*See discussion of Jalise Middleton's untruthful testimony. ECF 157 at 16-18.* |
| Total | 25 | |

<u>Count Eight</u>: 40 U.S.C. § 5104(e)(2)(D) – Disorderly Conduct in a Capitol Building

| Base Offense Level: | n/a | Because this offense is a Class B misdemeanor, the Guidelines do not apply. *See* 18 U.S.C. § 3559; U.S.S.G. §1B1.9. |
|---|---|---|

<u>Count Nine</u>: 40 U.S.C. § 5104(e)(2)(G) – Parading, Demonstrating, or Picketing in a Capitol Building

| Base Offense Level: | n/a | Because this offense is a Class B misdemeanor, the Guidelines do not apply. *See* 18 U.S.C. § 3559; U.S.S.G. §1B1.9. |
|---|---|---|

<u>Grouping Analysis, Criminal History, and Guidelines Range for Jalise Middleton</u>

Jalise Middleton's offenses fall into two groups. Group One relates to the assault on Officer T.T., which is Jalise Middleton's most serious assault, and consists of Counts One, Three, Five, Six, and Seven. Those counts all group pursuant to U.S.S.G. § 3D1.2(c) because Count One (the assault on Officer T.T.) embodies conduct (assault causing bodily injury) that is treated as a specific offense characteristic (the bodily injury enhancement pursuant to U.S.S.G. § 2A2.2(b)(3)(A)) applied to Counts Three (obstructing officers during a civil disorder), Five (trespass on restricted grounds), Six (disruptive and disorderly conduct on restricted grounds), and

Seven (physical violence on restricted grounds). Pursuant to U.S.S.G. § 3D1.3(a), based on the highest offense level within this Group (which comes from Counts One, Three, and Seven), the offense level for Group One is 25. Group Two relates to the assault on Officer R.C. and consists of Count Two. The offense level for Group Two is 22. Pursuant to U.S.S.G. § 3D1.4(a), 1 unit is assigned for Group One and 1 unit is assigned for Group Two. A total of 2 units results in an increase of two levels to the Group with the highest offense level, for a Combined Offense Level of 27. The Probation Office has calculated Jalise Middleton's criminal history category to be I, which is not disputed. Therefore, given an offense level of 27 as calculated above, her guidelines range is 70-87 months of incarceration.

**Upward Departure and Variance**

After determining the defendant's Guidelines range, a court then considers any departures or variances. *See* U.S.S.G. § 1B1.1(a)-(c). Based on the government's proposed guideline calculations, the government's recommended sentence does not reflect an upward variance from either defendants' advisory guideline range. However, if the Court determines that a lower advisory guideline range applies to either defendant, then the government submits that an upward variance or departure would be appropriate. In that circumstance, the defendants' guidelines ranges would not capture the unprecedented and uniquely harmful nature of their crimes, which struck at the heart of our democracy and the rule of law, their continued lack of remorse, or the risk they will again engage in future political violence.

The Middletons were avid and willing participants in an unprecedented crime that shattered norms and has forever changed our history. They joined a mob that threatened the lives of

legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses. An upward variance is appropriate because of the severity of the defendants' actions, their efforts to obstruct justice by perjuring themselves at trial, and their pervasive and unwavering refusal to accept a single shred of responsibility for their actions. Like every member of the mob, the Middletons "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent. Tr. 9/22/22 at 86-87.

But nothing in the Middletons' Guidelines calculations reflects these facts. They would face the same offense level if their crimes had not endangered the democratic process or interfered with the peaceful transfer of power.[4] There is no specific offense characteristic in the Guidelines for attacking democracy or abandoning the rule of law. "And simply saying, yeah, I know I

---

[4] The D.C. Circuit's holding in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024), finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's recent decision in *United States v. Fischer*, 144 S.Ct. 2176 (2024), demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, slip op. at 29 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

trespassed, I trespassed, that's not really capturing the impact of what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116 (DLF), Sent. Tr. at 85.

The Guidelines state that an upward departure is warranted where a case presents a circumstance that "may not have been adequately taken into consideration in determining the applicable guideline range" or that "the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence." U.S.S.G.  § 5K2.0(a)(2). The Guidelines also provide that a departure is warranted when an offense results in "a significant disruption of a governmental function" and the Guidelines do not reflect the appropriate punishment for the offense. U.S.S.G. § 5K2.7.[5] In such circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected."

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As Courts of this district, including this Court, have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducing the peaceful transfer of power. "The events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read and their children's children read. It's part of the history of this nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75 (RDM), Sent. Tr., at 67. The damage done to this country on January 6 must be reflected in the

---

[5] This guideline does not require the government to establish a direct link between the defendant's misconduct and the alleged disruption, nor does it "require that the disruption be of any particular type or consequence."  *See United States v. Saani*, 650 F.3d 761, 765–66, 771 (D.C. Cir. 2011).

sentences imposed on those who caused the damage—it must not be treated as just another crime. The Middletons were determined to change the outcome of the democratic process by any means necessary, including violent force. Together with their fellow rioters, they chose to take matters into their own hands through acts of violence and intimidation. *See United States v. Wyatt*, 23-CR-215 (RDM), Sent. Tr. at 44.

But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. History is not just the measure of events and the dates on which they occurred; history is the measure of how a society and its leaders choose to respond to those events to provide security, prosperity, and freedom to its posterity and, in doing so, form a more perfect union. Future generations will rightly ask what this generation and those who have filled these courtrooms did to prevent another such attack on our democracy from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime because it was not:

> "He just wanted to delay the certification. He wanted the election certification stopped. That's chilling to me. I mean, that is not a minor thing, in that through—through acts of violence and intimidation, we're going to stop the most sacred day in our democracy from occurring, which is the certification of the election, because we want some more time to try and make our case because the dozens and dozens of courts that have considered the issue and have concluded there was not a problem with the election weren't enough, and because I want someone else to take another look at this. And so, therefore, I'm going to go down to the Capitol and I'm going to stop the certification of the election from occurring. So, I think that the offense here, to my mind, is one of enormous gravity."

*Wyatt*, 23-CR-215 (RDM), Sent. Tr. at 44.

Indeed, even before *Fischer*, judges of this Court gave significant upward departures and/or variances when they found the advisory guideline range inadequate. *See, e.g.*, *United States v.*

33

*Hale-Cusanelli*, 21-CR-37 (TNM), 9/22/22 Sent. Tr.; *United States v. Christian Secor*, 21-CR-157 (TNM), 10/19/22 Sent. Tr.; *United States v. Hunter and Kevin Seefried*, 21-CR-287 (TNM). 10/24/22 Sent. Tr.; *United States v. William Watson*, 21-CR-513 (RBW), 3/9/23 Sent. Tr.; *United States v. Riley Williams*, 21-CR-618 (ABJ), 3/23/23 Sent. Tr.; *United States v. Hatchet Speed*, 22-CR-244 (TNM), 5/8/23 Sent. Tr.

And several judges of this Court have upwardly departed in January 6 cases precisely because, in a post-*Fischer* world, the advisory guideline range did not adequately take into account all of the relevant circumstances. *See United States v. Eicher*, 22-cr-38 (BAH), Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours"); *United States v. Black*, 21-CR-127 (ABJ), Sent. Tr. 5/16/23 at 27 (applying an upward departure pursuant to § 5K2.7).

Recently, in *United States v. Sparks*, 21-CR-87 (TJK), Judge Kelly sentenced a defendant convicted of violating both 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 231. Prior to sentencing and in light of the Supreme Court's *Fischer* decision, the government, as in this case, moved to dismiss the § 1512(c)(2) count, and at sentencing, Sparks faced an advisory guideline range of 15-21 months. Judge Kelly found it important that despite the dismissal of the § 1512(c)(2) count, the defendant's conduct still included "an intent to obstruct or interfere with that proceeding, that important constitutional proceeding" which the court found to be "pretty dark behavior" which "posted a threat to whether our constitutional process will proceed or whether a mob would interfere with that process." *Sparks* Sent. Tr., at 87-88. The court found that the "typical person

convicted of [18 U.S.C. § 231] engaged in nothing at all like the attack on the Capitol and the certification." *Id*. at 94-95.

Because Sparks' advisory guideline range was driven by the § 231 conviction, that range did not "account for the defendant's intent to obstruct, not just law enforcement officers doing their duty under that statute, but a proceeding, or for the purposes of [U.S.S.G. §] 5K2.7, a governmental function. And not any proceeding, but one foundational to our country's governance." *Id.* at 93. The court found Sparks' intent to "interfere or obstruct with the electoral college vote certification […] plays an important role in explaining why" Sparks' advisory guideline range did not fully account for his criminal conduct. *Id.* at 94. Accordingly, the court found a significant upward departure was warranted under both U.S.S.G. §§ 5K2.7 and § 5K2.21, and in the alternative a variance of equal amount was warranted under the § 3553(a) factors, and sentenced Sparks to 53 months of imprisonment.

Similarly, in *United States v. Robertson*, 21-CR-34 (CRC), Judge Cooper resentenced a defendant after dismissal of a § 1512(c)(2) conviction post-*Fischer*. Without that conviction, the court determined that a new advisory guideline range of 37 to 46 months applied. *See Robertson* Sent. Tr., at 59. But the court also found that an upward departure was appropriate pursuant to U.S.S.G. § 5K2.7, because Robertson's conduct "resulted in a significant disruption of a governmental function, namely halting of the certification […] and that is so regardless of whether Section 1512(c) applies." *Id*. at 61. The court also found an upward departure appropriate under U.S.S.G. § 5K2.0 because Robertson's conduct was "more harmful or egregious than the typical case represented by the otherwise applicable guideline range." *Id*. After considering the § 3553(a)

factors, Judge Cooper sentenced Robertson to 72 months of imprisonment.

And in *United States v. Dunfee*, 23-CR-36 (RBW), Judge Walton sentenced a defendant on a § 231 conviction and a misdemeanor, after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. Judge Walton found an upward departure was warranted under U.S.S.G. § 5K2.7, because Dunfee's actions contributed to and resulted in a significant disruption of the certification of the electoral college vote. Moreover, noting that "the Sentencing Commission did not contemplate the circumstances that occurred on January 6," the court also found that a departure was warranted under U.S.S.G. § 5K2.0(2) because Dunfee's criminal conduct related to "the attempt by a large number of individuals, including the defendant, to stop the peaceful transfer of power." *See United States v. Dunfee*, 23-CR-36 (RBW), ECF No. 90, at 2. From an advisory range of 18-24 months, the court sentenced Dunfee to 30 months of imprisonment.

If the Court declines to depart, an upward variance may be warranted. An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) (cleaned up).

While the Supreme Court's decision in *Fischer* has changed only nominally changed Jalise Middleton's advisory Guideline range and has not affected Mark Middleton's advisory range, "*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [a defendant's] serious conduct on January 6th, 2021 in its entirety. To reduce [the defendant's] sentence […] would require this Court to take a drastically different view of [their] conduct." *United States v. Hostetter*, 21-CR-392 (RCL), ECF 507, at 4-5 (cleaned up).

Indeed, "*Fischer* does not mean that I cannot consider at sentencing evidence that establishes that the defendant intended to obstruct Congress' certification of the electoral vote in determining whether […] the resulting guideline range fully accounts for the criminal conduct." *Sparks* Sent. Tr. at 95. *See also United States v. Kelly*, 21-CR-708 (RCL), ECF 151, at 5 ("Nothing about *Fischer* or any hypothetical outcome of [defendant's] appeal bears directly on the severity of his conduct on January 6th[.] Likewise, the outcome in *Fischer* would not dictate the Court's application of the sentencing factors prescribed in 18 U.S.C. § 3553(a)"); *United States v. Jensen*, 21-CR-6 (TJK), Sent. Tr. at 16 ("given the importance and the significance of the proceeding of certifying the Electoral College votes, I would vary upward—even if this [sentencing enhancement] didn't apply, I would vary upward when considering the nature of the offense.")

Also unprecedented is the need for January 6 sentences to promote respect for the law and deter future crime. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The January 6 rioters went far beyond merely breaking the law. "There is a difference between breaking the law and rejecting the rule of law." *See* Opening Remarks, January 6 Select Committee (Rep. Kinzinger).[6]

And the risk of another attack on the Capitol remains in this fraught year. "The heated and inflammatory rhetoric that brought the defendant to the District has not subsided. The lie that the election was stolen and illegitimate is still being perpetrated." *United States v. Meredith*, 21-CR-159 (ABJ), Sent. Tr. at 94-95. This is particularly true in this case, where the Middletons—since their arrest, but particularly since their conviction—have continued to fan the flames of discord and civil strife. Hardly a day goes by when one, if not—as it almost always is—both, of the

---

[6] Available at https://www.cnn.com/2021/07/27/politics/read-kinzinger-remarks-0727/index.html

Middletons do not spread lies about the 2020 election, defend, trumpet, and exalt their conduct at the Capitol, or celebrate other people who participated in the riot. While the Middletons have First Amendment rights, the Court should consider that the Middletons have not been at all deterred by having been found guilty of multiple federal felonies and placed on home confinement while they await sentencing. They still use the internet to spread the lies that led to January 6 occurring in the first place and, in doing so in tandem with celebrating their own criminal conduct at the Capitol, are again setting the board for a potential repeat of the riot as each day we are drawn nearer to another date on which elected officials will, pursuant to their constitutional duty, convene in the Capitol to certify the results of yet another hotly contested presidential election. If we are to prevent another January 6 and restore respect for the rule of law, then sentences in these cases must send a message. But that message will not be conveyed by treating the January 6 riot as a run-of-the-mill offense or an unexceptional event whose stark reality is easily forgotten or lost to history.

In addition to departing upwards, other courts have varied upward from the advisory range specifically because of the unique and serious nature of the crimes committed that day; this Court should do no less. *See United States v. Reffitt,* 21-CR-32 (DLF), Mem. Op. and Order 4/10/24 at 10-11 (upward variance would be justified because "as other judges in this district have noted, the proceedings at issue on January 6, 2021, were of much greater significance than run-of-the-mill 'judicial, quasi-judicial, and adjunct investigative proceedings'"); *United States v. Fonticoba*, 21-CR-638 (TJK), Sent. Tr. 1/11/24 at 66–67 (stating that, even if the defendant's § 1512 conviction were invalidated, a significant upward variance was warranted to account for the defendant's intent "to obstruct the proceeding and the nature of the proceeding itself"); *United States v. Secor*, 21-

CR-157 (TNM), Sent. Tr. 10/19/22 at 53 ("I believe both the seriousness of the event — you obstructed the certification of an official proceeding — and your particular role in it […] require a significant upward variance"); *United States v. Hale-Cusanelli*, 21-CR-37 (TNM), Sent. Tr. 9/22/22 at 87 ("I also believe the extensive damage and injuries caused on January 6th with your fellow rioters require additional punishment beyond what my [guideline] calculation allows.").[7]

We cannot get that tradition of the peaceful transfer of power back. It is gone and we are the worse for it. In the event the court calculates an advisory guideline range for either defendant that is below 87 months, the government submits that an upward variance and/or departure would be warranted to reach a sentences that adequately reflect the seriousness of the Middletons' conduct and sends a clear message to those who would seek to undermine the democratic process with the brute force of mob violence.

## V.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance,

---

[7] The D.C. Circuit has made clear that it "ordinarily presume[s] a district court imposing an alternative non-guidelines sentence took into account all the factors listed in § 3553(a) and accorded them the appropriate significance." *United States v. Warren*, 700 F.3d 528, 533 (D.C. Cir. 2012) (quoting *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005)). But as recently discussed in *United States v. Iracks*, 2024 WL 3308241 (D.C. Cir. July 5, 2024), for a sentence above the applicable Guidelines range, the Sentencing Reform Act provides that the district court must state "the specific reason for the imposition of a sentence different from that described [in the Guidelines,]" both orally during the sentencing and on a written form appended to the judgment. 18 U.S.C. § 3553(c)(2) (emphasis added). Accordingly, the government requests that the Court make specific findings that these defendants' "conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range" and "explain why the otherwise applicable Guidelines calculation 'does not fully account for the described criminal conduct.'" *United States v. Brown*, 892 F.3d 385, 404–05 (D.C. Cir. 2018) (quoting *Brown*, 808 F.3d at 867, 872 (D.C. Cir. 2015)).

the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.      Nature and Circumstances of the Offense

The Middletons' felonious conduct on January 6, 2021, was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. The Middletons travelled to Washington after researching how to transport and possess weapons in the District of Columbia. After surveying the barricades on January 5 and the morning of the 6th, they breached the secure perimeter and maneuvered their way to the front of the crowd where they assaulted two police officers, with Jalise causing injury to one officer and Mark using a weapon on the other. After the fact, they boasted about their conduct and discussed how their violent acts led directly to the certification coming to a halt. Since their convictions, they have continued to express pride in their crimes, increase their public profile, and install themselves as unofficial leaders amongst those who peddle in conspiracy theories about January 6.

The Middletons violent crimes are inextricably intertwined with their intent to "storm the Capitol" and stop the certification of the 2020 presidential election. They did not appear in the West Plaza and assault police officers during a riot by happenstance; instead, they engaged in a deliberate and calculated course of action that culminated with them assaulting these officers in furtherance of their political objectives. This fact is a significant aggravating factor and one that the Court should weigh heavily in crafting its sentence. The Middletons' conduct was not a random assault on a random police officer committed to accomplish some unclear end. This was an act of political violence that struck at the beating heart of our democratic system. *United States v. Cronin*,

22-cr-233 (ABJ), Tr. June 9, 2023, at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.") The nature and circumstances of the Middletons offenses were of the utmost seriousness fully support the government's recommended sentence of 87 months of incarceration.

### B.    The History and Characteristics of the Defendant

Mark Middleton, a fifty-five-year-old with a master's in theology, has no criminal record. M. Middleton PSR at ¶125. Jalise Middleton, a fifty-four-year-old with a high school diploma, also has no criminal record. J. Middleton PSR at ¶ 143, 150-152. The Middletons, despite never having run afoul of the law before, decided on January 6, 2021, to join a riot to accomplish their political ends. In furtherance of that end, they came to Washington prepared for violence. Their rhetoric surrounding their conduct at the Capitol contained repeated references to wars and culminated with Jalise's promise on January 5 that an "ass whoopin'" would be coming the next day. At the Capitol, the Middletons made good on their rhetoric and assaulted police.

In its original sentencing memorandum, the government noted the many statements that the Middletons have made demonstrating their total lack of remorse. *Id.* at 44-45. That remains true. Since the government filed its original sentencing memorandum on May 24, the defendants, while on home confinement, have continued to make numerous media appearances. Since August 9, 2024, Jalise Middleton has begun making near daily appearances on an internet program in which she spreads falsehoods about January 6, slanders the officers who defended the Capitol, and

41

promotes as "patriots" other people who have been charged or convicted of crimes in connection with the Capitol riot. *See* Brandenberg News Network, "8/9/2024 Off the Grid," starting at 1:51:30, *available at* https://rumble.com/v5aamed-bnn-brandenburg-news-network-892024-off-the-grid-journalist-panel-j6er-jali.html; *see also* Brandenberg News Network, "10/3/2024 Technocratic Communism," starting at 2:11:51, *available at* https://rumble.com/v5haba2-bnn-brandenburg-news-network-1032024-technocratic-communism-against-hate-j6.html. This recurring spot is in addition to the media appearances that she has made together with Mark Middleton in which they continue to repeat the lies that she told during her testimony at trial and cast aspersions on the justice system. *See, e.g.,* "Praying patriots grabbed by scarf Jan 6," *available at* https://rumble.com/v56safp-praying-patriots-grabbed-by-scarf-jan-6.html (July 13, 2024). Mark Middleton has used his Twitter to trumpet—on an at least daily if not almost hourly basis—convicted January 6 rioters, promulgate conspiracy theories about the 2020 presidential election, and spread baseless lies about January 6.[8] The Middletons continue to express not only a total lack of remorse but also an ever-present pride in their conduct that day. They have continued to hold themselves out as *de facto* leaders for those who have been charged for the crimes that they committed at the Capitol. In its original sentencing memorandum, the government stated that, in this case, the "opportunity for reform and reckoning is gone." ECF 157 at 47. In the intervening months, that opportunity has only diminished further. The Middletons have shown themselves to be either incapable or utterly unwilling to demonstrate hint of contrition. The Middletons history

---

[8] A selection of Mark Middleton's tweets from between February 13 and May 24, 2024, are reproduced in ECF 157-1. He continues to tweet using the same Twitter handle.

and characteristics fully support a sentence of 87-months of incarceration.

### C.      The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The Middletons' criminal conduct on January 6 was the epitome of disrespect for the law. But, the Middletons were not merely disrespecting the law, they were active and eager participants in an attack on the bedrock principle of our republic. In their constant media appearances, repeated defenses of their conduct, demeaning statements about the democratic process, and cruel statements about the police who defended the Capitol, the Middletons have shown that they do not believe their crimes were serious at all and that they have no respect for the rule of law whatsoever. A sentence of less than 87-months in this case would suggest to the public, in general, and other rioters, specifically, that, as our nation approaches yet another national election, this violent conduct and the motives that underlie it are not taken seriously. In this way, a lesser sentence could encourage further abuses. *See Gall*, 552 U.S. at 54 (it is a "legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect for the law").

### D.      The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[9] The demands of general

---

[9] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

### *Specific Deterrence*

The need for the sentence to provide specific deterrence to these particular defendants also weighs heavily in favor of a lengthy term of incarceration. As the government previously stated, "Jalise and Mark Middleton are not people who are easily deterred." ECF 157 at 47. The Middletons knew that they were entering the scene of a riot, but they were determined to storm the Capitol and stop the certification and nothing short of direct physical force would deter them. Similarly, at the West Plaza police line, they ignored repeated commands to leave. Instead, Mark Middleton questioned why the police officers in the West Plaza were protecting the Capitol from the rioters, called those officers traitors, and, after they resisted his first efforts to push through the barricades, yelled "Fuck you!" at them. After the assault, they both boasted of their crimes and their effects: enabling other rioters to breach the police line and gain access to the Capitol where the vote to certify the 2020 Electoral College results had to be stopped.

While the Middletons' conduct on January 6, 2021, alone is sufficient to show that they are dearly in need of specific deterrence, their conduct since their arrest and particularly their conviction, is even more evidence of the quintessential need of specific deterrence here. The Middletons are, have been, and will continue to be extremely proud of what they did. They have said so repeatedly. The Middletons have mocked their post-conviction conditions of release and see themselves as "martyrs" for a cause. ECF 157 at 22-23. In the eight months since their convictions, they have used their social media accounts to broadcast dishonest and fanciful

narratives about the riot at the Capitol, and to evade culpability and responsibility while at the same time having the audacity to claim that MPD and USCP officers were responsible for the violence of January 6. At every turn in this case, from arrest to trial to conviction and since, they have shown themselves to be undeterred. This Court should sentence the Middletons in such a way that it specifically deters them from ever engaging in this behavior again.

### F.    Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar *conduct*" (emphasis added). So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007).

Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own

set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[10] "When an offense is uniquely serious, courts will consider the need to impose stiffer sentences that justify the risk of potential disparities." *United States v. Mattea*, 895 F.3d 762, 768–69 (D.C. Cir. 2018) (cleaned up).

In its original sentencing memorandum, the government cited two cases as comparators: *United States v. Taylor Johnatakis*, 21-cr-91 (RCL) (defendant sentenced 87 months) and *United States v. Thomas Smith*, 21-cr-599 (RBW) (defendant sentenced to 108 months). *See* ECF 157 at 49-51. The government submits that both cases remain good comparators. While the requirements for a conviction under § 1512(c) have changed, the underlying criminal conduct has not. *Id.*

## VI.    RESTITUTION

For the reasons in its original sentencing memorandum, the government requests that the Court require Mark and Jalise Middleton to each pay $2,000 in restitution for their convictions.

---

[10] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022, Sent. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

ECF 157 at 51-53. This amount fairly reflects their role in the offense and the resulting damages.

## VII.    FINE

For the reasons in its original sentencing memorandum, the government requests that the

Court require both Mark and Jalise Middleton to each pay a fine. ECF 157 at 53-55.

### CONCLUSION

For these reasons, the government requests that the Court sentence Mark and Jalise

Middleton each to 87 months of incarceration, three years of supervised release, $2,000 in

restitution, a fine, and a mandatory assessment of $360.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      _s/ Sean P. McCauley_
SEAN P. McCAULEY
Assistant United States Attorney
New York Bar No. 5600523
United States Attorney's Office
For the District of Columbia
601 D Street, NW
Washington, DC 20530
Sean.McCauley@usdoj.gov

_s/ Brendan Ballou_
Brendan Ballou
DC Bar No. 241592
Special Counsel
United States Attorney's Office
601 D Street NW
Washington, DC 20001
(202) 431-8493
brendan.ballou-kelley@usdoj.gov

47